## EX PARTE A. C. CARTER.

[60 South. 324]

BAIL.   *Right to bail.*

The decision of a chancellor denying bail will not be disturbed where the defendant was charged with the murder of a city marshall and the evidence showed that the marshall when killed was in the lawful discharge of his official duty as a peace officer and attempting to arrest the defendant.   .

APPEAL from the chancery court of Chickasaw county. HON. J. Q. ROBINS, Chancellor.

Application of A. C. Carter for *habeas corpus* to compel the granting of bail.   From a judgment denying bail, the appellant appeals.

The facts are fully stated in the opinion of the court.

*Geo. T. Mitchell*, for appellant.

My understanding of the law is that where there is a reasonable doubt arising from the testimony as to whether or not a person is guilty of murder in killing another then the proof is not evident and the presumption is not great and he is entitled to bail.   Here there were only two eye witnesses and their testimony is in irreconcilable conflict, the testimony of Cole making out a clear case of self-defense for appellant, and I submit that in this state of the record, relying solely upon the facts of the case and eliminating all questions of the law, that appellant was clearly entitled to bail.

As to the second proposition, namely—conceding that the testimony of Jolly is absolutely true, I submit that appellant under the decisions of this court, and of every other court, could not possibly be guilty of anything but manslaughter, and would therefore be entitled to bail as a matter of right.   .

It must be remembered that Carter had not committed any offense in the presence of these officers, that there is no pretense that he had ever committed any felony,

that no affidavit had been made and no warrant issued
for his arrest, and that therefore his attempted arrest
by these officers was illegal; and it is well settled that one
who kills an officer in resisting an illegal arrest attempt-
ed by such officer is not guilty of murder but of man-
slaughter only.

In the *Strickland case*, 81 Miss. 134, where a negro was
charged with murder in the killing of a white man who
the testimony shows was an officer, Judge TERRELL,
in delivering the opinion of the court says: "The appel-
lant here is not shown to have committed any wrong;
his assailants show no warrant against him; yet he is
assaulted in his own home at night by unknown persons,
some of whom are visibly armed, and one of them is
killed in consequence. Without more, such evidence
only presents a case of manslaughter."

In the *Cryer case*, 71 Miss. 467, which was a much
stronger case than the one against appellant here, Judge
COOPER in delivering the opinion of the court says:
"The officer making the arrest on the occasion of the
homicide confessedly had no warrant; the evidence
leaves it more than doubtful that any fellony had been
committed by anyone, or that appellant "et al", had
been charged, upon reasonable cause, with the commis-
sion of a felony; and confessedly, the offense for which
the arrest was sought to be made not was committed
in the presence of the officer.

"The second instruction for the state informed the
jury 'that if you believe from the evidence in this case,
that the defendant shot and killed deceased at a time
when deceased and others were trying to arrest defendant
et al. and that he, defendant, shot and killed him in
order to prevent said arrest, the defendant is guilty as
charged, and the jury should so find."

"This instruction either tells the jury that the arrest
sought to be made was a lawful arrest, and was therefore
erroneous because upon the weight of evidence, or in-
structed the jury that, if one unlawfully sought to be

arrested resists and kills the party seeking to arrest him, to prevent such arrest, and not in malice, he is guilty of murder. This is not the law, for the killing under such circumstances would be manslaughter, and not murder."

I submit that under the two decisions cited above, taking even the strongest view of the case against appellant as made out by the state's witnesses, he could not possibly be guilty of more than manslaughter, and that upon either of the propositions advanced he is clearly entitled to bail.

*R. N. Miller*, for appellant.

The law of bail is not doubtful and is very simple in *Ex parte Bridewell*, 57 Miss. 39, provides that "bail in a capital case is a matter of right, if a well founded doubt of the prisoner's guilt be entertained." This case has, ever since its deliverance, been held by this court to be the controlling authority on the subject.

"If, upon the whole testimony, there be a reasonable doubt of whether the relator is guilty of a capital crime, then he is entitled to bail."

The best exposition of the law of bail that I know in our state reports is to be founded in Judge *Arnold's* dissenting opinion in *Ex parte Hamilton and Eubanks*, 65 Miss. 153.

Whilst Judge ARNOLD delivered this opinion as a dissenting opinion it really was the opinion of the whole court as to the rules and law governing bail, and ought to be the guide of every court considering the question of the constitutional right to bail.

In this case we have only two eyewitnesses, the state's witness, Jolly, flatly contradicting himself and telling a most unreasonable and unnatural story about the beginning of this difficulty, contradicted by a most respectable gentleman, present at the time who made a clear case of Carter's right to act upon appearances in self-defense, and when we remember how very

common it is for these little officers armed with brief authority to rush in and begin to beat the country citizens and mistreat them, it is a most natural account of how this difficulty occurred.

At all events, this is bound to be conceded as an attempt to make an unlawful arrest. These men had committed no offense known either to the law of the state or the ordinance of the town, except that it turned out that Carter did have a pistol on him. This, however, was unknown to the officers.

I need not tell this court that a misdemeanor committed in the officer's presence is the only misdemeanor for which an arrest may be made lawfully without warrant, for every other misdemeanor, not committed in the officer's presence, he must have a warrant.

I am equally confident that I need not say to the court that the officer cannot make an arrest without warrant upon a mere suspicion that a party has a concealed deadly weapon on him. That is not an offense committed in the officer's presence, of course.

The ordinances of the town are relied upon as furnishing authority to the marshal to arrest without warrant. In other words, it is contended that this ordinance authorizes the marshal, at his own sweet will, to arrest a citizen and deprive him of his liberty. This would be an absurd conclusion. The language of the ordinance "to arrest with or without warrant" means simply to arrest in proper cases, with or without warrant. That is, for offenses committed in the officer's presence to arrest as at common law, without warrant, but for offenses not committed in his presence he must have a warrant, as at common law.

If it is pretended to say that this ordinance authorized the arrest with or without warrant regardless of whether the offense was committed in the officer's presence, it is then unconstitutional.

As held *In re Kellam*, 55 Kan. 700, 41 Pac. 960; *State* v. *Brittian*, 4 A. Cr. Rep. 458, it cannot be pretended that

because it turned out that Carter had a pistol that therefore the officer had a right to arrest as for an offense committed in his presence. See *Ballard* v. *State*, •43 Ohio, 340, 5 Am. Cr. Rep. 36.

For let it be borne in mind here that there was no pretense that the officer had any information whatever that Carter had a pistol, and there was no emergency. He could easily have waited and made the affidavit the next day. No bonds of society were being disrupted by this man which called for this high-handed undertaking to deprive a citizen of his liberty.

It being conceded, then, that the arrest was unlawful, we say that resistence of an unlawful arrest can never be more than manslaughter. See *Jones* v. *State*, 8 Am. St. Rep. 454; *Bullock* v. *State*, 86 A. S. R. 668.

In *Cryer* v. *State*, 71 Miss. 467, this court said: "One unlawfully sought to be arrested, who without malice and to prevent such arrest, kills the party seeking to arrest him, is not guilty of murder but of manslaughter only. . . . An arrest sought to be made by an officer without a warrant for a crime not committed in his presence, and when it is doubtful if any crime has been committed is an unlawful arrest." See this case reported in 42 Am. St. Rep. 474, with the extended notes thereto.

1 Russel on Crimes, p. 535; 18 Am. St. Rep. 91; *Muely* v. *State*, 8 Am. St. Ry. p. 477; Hughes Crim. Law and Proc., sec. 2655; *Rafferty* v. *People*, 72 Ill. 40; *Roberts* v. *State*, 14 Mo. 138; S*tate* v. *Symes*, 20 Wash. 484, 55 Pac. 626; *Briggs* v. *Com.*, 82 Va. 554; *Musco* v. *Com.*, 86 Va. 443; *Ross* v. *State*, 10 Tex. App. 455; *Harrison* v. *State*, 24 Ala. 67; *Croom* v. *State*, 85 Ga. 718; 2 Roscoe's Crim. Ev. 791, 1 Hale P. C. 465; 1 East P. C. 110.

At all events, and viewed in any light, this case is bailable because it could only amount to manslaughter. We respectfully submit, therefore, that it is not only reasonably in doubt as to whether or not the defendant killed Brazil in self-defense, or at all events, under such

circumstances as would only amount to manslaughter, but it is perfectly clear that this was an unlawful attempt by Mr. Brazile to deprive Carter of his liberty by an attempt at illegal arrest and therefore that the case in either aspect is clearly a bailable case.

*Geo. H. Ethridge*, assistant attorney-general, for the state.

The question presented is whether the chancellor erred in refusing bail to the appellant on his application. One of the first questions presented by this record and lies at the threshold of the case is the question as to whether or not the marshal had authority to arrest the appellant without a warrant.    In regard to the right of a marshal to make the arrest, section 56 of the charter of the city of Okolona was introduced in evidence.    This is an act of the legislature conferring authority on the marshal and defining his powers and duties.    The section is as follows:

"Be it further enacted that the marshal of said city shall execute all process directed to him by the Mayor of said city, shall arrest with or without warrant any person who shall violate any ordinance of said city and shall carry them forthwith before the mayor to answer such charges and, in case a trial cannot be had forthwith, shall have power to lodge such offender in the city jail, there to be safely kept until a trial can be had or to take bond in a sufficient penalty to be fixed by said marshal, with one or more good and sufficient securities to be approved by said marshal, payable to the city of Okolona and conditionad for the appearance of said person at the appointed time for trial and from time to time until such trial is had, and in default of such appearance the mayor shall enter a forfeiture against such person and his securities in the same manner and under the same regulations by which forfeitures under the laws of the state are entered in the courts, and on final hearing on notice to his sureties on failure to show reasonable cause

for such failure, shall enter judgment therefor; and, after the expiration of five days if no appeal has been entered, may issue execution for the amount of such judgment and all costs. Said marshal shall have power to summons and compel any citizen to assist him in the arrest of any offenders or in carrying offenders to the city jail, and he shall perform all other duties required of him by the ordinances of said city. Said marshal shall wait upon and attend the mayor's court and when required, the meetings of the city Council, and shall be chief of police and city watch. And when his busi- so requires, may appoint, at his own expense, one or more deputies with all the powers and duties of said marshal."

It is clear that the legislature has power to authorize any officers to arrest without warrant under any circumstances, and this would authorize under any circumstances an officer to make arrest on declaring his purpose and notifying the person to be arrested of the offense charged and of his authority where that is not already known. This section is different from the common law in the state statutes which does not authorize arrest for offenses occuring in their presence without having a warrant and an affidavit, but in the charter of cities and towns the legislature, deeming the public interest to require it, has conferred on most of them powers of this kind, and it is an almost universal practice for the city officers to arrest without a warrant any person who had violated the municipal ordinances. This power is expressly conferred in this act, and there is no dispute about appellant knowing the official character of Brazile, the city marshal, and it is shown in evidence that on the afternoon prior to the killing that the appellant had related the fact that the marshal had arrested people for less things than he and his companion were doing. It is also manifest that the appellant was guilty of the commission of an offense in the presence of the officer even where the requirements of the law that the offense

should be committed in, the presence of the officer to authorize the officer to make an arrest. The officer distinctly told him that he was arresting him because he had a pistol and the appellant then did have a pistol concealed, or partly concealed, on his person; and the city of Okolona had promulgated an ordinance making all misdemeanors against the laws of the city municipal offences within the municipality of Okolona, and had also a special ordinance appearing on page 105 of the ordinance book of the city of Okolona which was introduced in evidence, prohibiting the carrying of any deadly weapon concealed, within the municipal limits. Presumably Carter knew the existence of these ordinances, and was bound to know of them or he would have acted at his peril in resisting an officer:

It is perfectly manifest, therefore, that Brazile, the marshal, had a perfect right and it was his imperative duty to arrest Carter for the offense committed, and such arrest being a lawful one, resisting it by killing the marmarshal would be murder.

The rule laid down in Wharton's New Criminal Law, at page 725, section 540, is in the following words, "Intentional killing an arresting officer is murder. When a party who, having authority to arrest or imprison, uses the proper means on a proper occasion for such a purpose, and in so doing is assaulted and killed, it will be murder in all concerned if the intent be to kill or inflict greivous bodily hurt. And it has been decided that if in any quarrel, sudden or premeditated, a justice of the peace, constable, or watchman, or even a private person be slain in endeavoring to keep the peace and suppress the affray, he who kills him will be guilty of murder. But to sustain a charge of murder it must appear that the person slain had given notice of the purpose for which he came, by officially commanding the parties to keep the peace, or by otherwise showing that it was not his intention to take part in the quarrel, but to appease it; unless, indeed, he were an officer within

his proper district, and known, or generally acknowledged, to bear the office he had assumed."

The testimony in the case clearly shows that Brazile had made known his purpose to arrest the appellant and made known the offense for which he was being arrested, and it is perfectly manifest that Carter knew of the official character of the marshal, and that the marshal was within his district. It seems that there could be no question if the state's evidence be true, but that the crime committed was murder.

In the case of *Tolbert* v. *State*, 71 Miss. 179, the supreme court of this state held that a convict had no right to use arms to prevent his arrest and that the person undertaking to arrest him, who was killed by the Tolberts, made a case of murder whether the party seeking to arrest him fired the first shot or not. And all the authorities, I think, bear out the contention that if the arrest attempted is a legal arrest that the killing would be murder.

It is the legal duty of every person to submit to lawful arrest, and the officers undertaking to enforce public statutes of the state and secure peace and order to the communities which they serve are entitled to the protection of the law.

It is stated in Wharton's New Criminal Law, section 542, that constables, policemen, and other peace officers, while in the execution of their offices, are under the peculiar protection of the law—a protection founded in wisdom and equity, and in every principle of political policy; for without it the public tranquility cannot possibly be maintained, or private property secured; nor in the ordinary course of things will offenders of any kind be amendable to justice. For these reasons the killing of officers so employed has been deemed murder of malice prepense, as being an outrage willfully committed in defiance of public justice. This protection, as has been already observed, is not confined to the period when the peace officer is at the scene of action, for he is

under the same protection of the law *eundo, morando, et redeundo.* If known to be a peace officer, about to repair to a scene of public disorder in the exercise of his duties, it is murder to kill him in order to prevent him from discharging his duties; and it is also murder to kill him after he leaves the spot in retreat or otherwise; if his authority is not known, the killing in hot blood is manslaughter.

The testimony of the state's witnesses, showing the language used by the appellant, clearly indicates the willful and malicious murder committed solely from the promptings of an evil and malignant heart; and as these facts were accepted as being true by the chancellor who had the opportunity of seeing the witnesses face to face and of observing their appearances, demeanor, and other criteria for arriving at the truth, which this court has not as a review court, and as the case made by the state's evidence makes out a case of murder, this court will not reverse the findings of the chancellor. The findings of the chancellor are at least *prima facie* true as decided in the case of *Street* v. *State,* 43 Miss. 1.

Argued orally by *Claude Clayton* and *R. N. Miller,* for relator and *George H. Ethridge,* assistant attorney-general, for the state.

Reed, J., delivered the opinion of the court.

The appellant is charged with murder. This appeal is from the action of the chancellor in denying him bail upon a writ of *habeas corpus.*

Between eight and nine o'clock on the night of September 28, 1912, in the city of Okolona, appellant, A. C. Carter, shot and killed Will Brazile, the marshal of that city. It is shown by the testimony for the state that the appellant and his friend, Ira Cole, had been drinking during the afternoon and evening. Marshal Brazile was notified that the appellant had broken a show window of a store. He went to the store, and at his request was accompanied by C. C. Jolly, a constable. The

appellant and Mr. Cole were found in front of the store, and the deceased approached appellant and said: "Niram, I am going to arrest you. You have got a gun." Appellant thereupon stated that he would not be arrested, and drew his pistol and shot and killed the deceased. He afterwards fired twice at Constable Jolly, both shots taking effect. Constable Jolly attempted to strike appellant when he drew his pistol, for the purpose, as stated by the constable, of saving Brazile's life. Mr Cole, by throwing up his arms, prevented the blow from reaching appellant. The pistol shots were in rapid succession. Mr. Cole, in his testimony for the defense, states that, as soon as Marshal Brazile and Constable Jolly reached appellant, Jolly struck at appellant with a stick twice. The first blow struck a window, and the second blow knocked appellant to his knees, and then appellant started to shoot. The physician who examined the deceased's body stated, in answer to the question as to whether the ball ranged upward or downward, that it went straight in. Mr. Cole in his testimony stated that he had only taken two drinks and was not under the influence of liquor, and also stated that he had no recollection of having a conversation with a friend, Mr. Bransford, during the afternoon. Mr. Bransford testified that in the afternoon, between 4:30 and five o'clock, he told the appellant and Mr. Cole that it was about time for them to be going home, and that Mr. Cole said that he should go, and that the marshal had arrested a man for not doing any more than they were doing. He stated, in effect, that they were then under the influence of drink. There were only two witnesses to the homicide—Constable Jolly and Mr. Cole.

In the act of the legislature granting the charter to the city of Okolona, it is provided in section 56 that the marshal of the city shall arrest, with or without warrant, any person who shall violate any ordinances of the city. An ordinance of the city, duly enacted, makes

the carrying of concealed weapons unlawful. Another ordinance provides for the punishment of misdemeanors under the laws of the state as though they were violations of the city ordinances, and another ordinance makes excessive drinking or disorderly conduct misdemeanors. Mr. Wharton in his Law of Homicide (3d Ed.), section 387, says: "Ministers of justice, such as bailiffs, constables, watchmen, etc., while in the execution of their offices, are under the peculiar protection of the law; and the killing of officers so employed has been deemed murder of malice prepense, as being an outrage willfully committed in defiance of justice and law. The general rule, therefore, is that if a person attempting or making an arrest is a lawful officer, and known to be such by the person sought to be arrested, and is authorized by law to make the arrest, and he is slain in the discharge of his duty by the latter, or by some other person interfering in his behalf, the killing is deemed to be malicious, and the offense is murder in some degree, according to the other accompanying circumstances." In further discussion of the general subject, and referring specially to the right of self-defense, in section 402 of the same book, Mr. Wharton says: "The fact that an officer or citizen making an arrest exceeded his authority does not necessarily justify killing him in resistance of the arrest, or necessarily reduce the killing to manslaughter. The question in such case is whether the act of killing the officer was done in the lawful exercise of the right of self-defense. And if the person sought to be arrested had no valid reason to believe himself in immediate danger of death or great bodily harm, the killing will be deemed to have been committed, not in passion or fear, but with malice. A person sought to be arrested has no right to take life, except to protect his own life, or his person from great bodily harm, though the person attempting to make the arrest may not have strictly complied in every respect with the law."

In the present case it will be seen that the marshal is authorized by the charter of Okolona, properly granted to that city by legislative enactment, to make arrests in cases of misdemeanor without warrant, and it therefore appears that at the time he was killed he was in the lawful execution of his duties as a peace officer of the city. The case was fully presented to the chancellor. The witnesses were before him. He saw as well as heard them. From a careful and full review of this case, we believe that he was correct in denying the appellant bail, and we will therefore not disturb his decision.

*Affirmed.*